LUCIA CASTRO *et al.*, Plaintiffs-Appellants, v. SOUTH CHICAGO COMMUNITY HOSPITAL *et al.*, Defendants (Jordan Daniels, Defendant-Appellee).

First District (3rd Division)   No. 87—1463

Opinion filed February 10, 1988.

Alan C. Mendelson and H. Elisabeth Huber, both of Chicago, for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago (Ruth E. Vandemark, Mary K. Periolat, and Richard M. Kuntz, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Lucia Castro sought damages for injuries allegedly sustained as the result of the medical malpractice of defendants Dr. Jordan Daniels, South Chicago Community Hospital, Dr. Saroj Verma, and several other doctors who have been dismissed from the suit. Plaintiff's husband, Raymond Castro, filed a loss of consortium claim. The trial court entered an order barring the use of additional experts pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220), and entered summary judgment in favor of Dr. Daniels. Plaintiffs appeal from

both orders, contending that the trial court had no authority to bar the testimony and abused its discretion in barring other experts. The hospital and Dr. Verma are not parties to this appeal.

In May 1979, plaintiffs filed this action in regard to a 1977 hospitalization and surgery. Subsequently, plaintiffs failed to respond to, or comply with, defendants' requests to identify their expert and disclose his medical opinion. Plaintiffs also violated several court orders directing such disclosure and failed to respond to related motions filed by defendants.

In June 1986, after several court-imposed deadlines had passed, plaintiffs disclosed Dr. Joshua Fierer as their expert. In July 1986, however, Dr. Fierer testified at a deposition that in his opinion Dr. Daniels did not deviate from the standard of care and was not negligent. In November 1986, Dr. Daniels moved for enforcement of the 1981 court orders imposing deadlines for disclosure of experts and moved for summary judgment based on plaintiffs' lack of any expert opinion or other evidence showing Dr. Daniels' negligence. Plaintiffs failed to respond to the motions, even after the court gave them additional time. Finally, in February 1987, after the court-imposed deadlines had passed, plaintiffs disclosed Dr. Marc Pomerantz as a new intended expert witness, stating that they "believed" he would opine that Dr. Daniels had deviated from the relevant standard of care. In March 1987, the court denied plaintiffs' request for more time to respond to defendant's motions, and denied their request to use any expert, except their previously disclosed expert, Dr. Fierer. The court granted Dr. Daniels' motion to enforce, and his motion for summary judgment.

■■ Plaintiffs contend on appeal that the trial court lacked the authority to bar the use of an additional expert witness under Rule 220 because at the time the court did not indicate it reasonably anticipated setting a trial date in the near future. They argue that "[n]othing in this Rule authorizes the court to establish deadlines requiring a party to obtain expert witnesses." On the contrary, the rule provides that "as to all expert witnesses not previously disclosed, the trial court, on its own motion *** shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed." Moreover, the parties must act in good faith to ascertain the identity of expert witnesses they reasonably contemplate using and must obtain from them the opinions upon which they may be requested to testify. 107 Ill. 2d Rules 220(b)(1)(i), (b)(1)(ii).

Plaintiffs maintain that the rule's purpose is to insure "that discovery regarding expert witnesses will be completed no later than 60

days before the date on which the trial court reasonably anticipates the trial will commence." The language of the rule, however, presents no obstruction to the imposition of a disclosure schedule in a case which is not necessarily approaching the 60-day period before trial. (107 Ill. 2d R. 220(b)(1).) We find nothing in the rule's language restricting the time for barring a witness to the eve of trial. As part of the court's function in pretrial proceedings and in preparing all parties for a fair and efficient trial, Rule 220 authorizes the trial court to schedule disclosure prior to the eve of trial and to bar the testimony of any expert not disclosed under that schedule.

The trial court here had the authority to impose the disclosure schedule. It also had the authority to bar additional experts after finding that plaintiffs failed to act in good faith to reasonably ascertain the identity of an expert and obtain from him an opinion upon which he might be requested to testify.

In support of their argument that the court lacked the authority to bar their expert, plaintiffs also rely upon the Rule 220 provision that "the identity of an expert *** must be disclosed by that party either within 90 days after the substance of the expert's opinion first becomes known to that party or his counsel or, if the substance of the expert's opinion is then known, at the first pretrial conference in the case, whichever is later." Plaintiffs' construction of the 90-day provision would permit litigants to purposely avoid learning the substance of the expert's opinion in order to extend the time in which they must identify the expert and his opinion.

Plaintiffs next contend that, even if the trial court had the proper authority, it abused its discretion in barring the testimony of Dr. Pomerantz. Rule 220 provides that "[f]ailure to make the disclosure required by this rule or to comply with the discovery contemplated herein will result in disqualification of the expert as a witness." (107 Ill. 2d R. 220(b)(1).) A litigant's failure to comply with a court order imposing an affirmative obligation to disclose experts warrants the disqualification of the expert whose opinion is offered in opposition to a motion for summary judgment. (*James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 510 N.E.2d 531; see also *Phelps v. O'Malley* (1987), 159 Ill. App. 3d 214, 511 N.E.2d 974.) Moreover, the imposition of sanctions under Rule 219(c) for failure to comply with orders under Rule 220 is within the discretion of the trial court. (*Fischer v. G & S Builders* (1986), 147 Ill. App. 3d 168, 497 N.E.2d 1022.) Its judgment will not be disturbed on review absent a clear showing of abuse of discretion. *James v. Yasunaga* (1987), 157 Ill. App. 3d 450, 510 N.E.2d 531; see also *Johanek v. Ringsby Truck*

*Lines, Inc.* (1987), 157 Ill. App. 3d 140, 509 N.E.2d 1295.

■ Under the circumstances presented here, we find no abuse of discretion. While Rule 220 was not devised as a means of forcing litigants to use an expert witness, or as a means of blocking the parties' right to a trial, the chronology of events strongly supports the trial court decision.

On May 4, 1979, plaintiffs filed the complaint which alleges that on and after February 11, 1977, defendants negligently rendered medical treatment to plaintiff, including performing an unnecessary colostomy as a result of post-surgical complications suffered after the delivery of her baby by caesarean section.

On August 2, 1979, plaintiffs' answers to interrogatories stated that her "attorney has consulted various physicians, but no decision has been made as to who will testify on my behalf at the present time."

On January 21, 1981, Dr. Daniels filed supplemental interrogatories asking plaintiffs to identify the expert witnesses and disclose their medical opinions.

On January 19, 1982, nearly three years after filing the complaint, plaintiffs deposed Dr. Daniels.

On September 28, 1982, defendant Dr. Michael Makii, who has since been dismissed from the suit, filed an interrogatory asking plaintiffs to identify any physicians who opined that he was negligent. Eighteen months later, after plaintiffs violated two court orders directing an answer, plaintiffs replied that no physician had made a direct reference to Dr. Makii.

On April 23, 1985, the defendant hospital filed supplemental interrogatories asking plaintiffs to identify their expert witnesses. On January 21, 1986, Dr. Makii filed a motion to dismiss for want of prosecution or to compel plaintiffs to disclose their experts. On the same day, the trial court ordered plaintiffs to disclose their experts by April 18, 1986. Plaintiffs failed to either challenge or comply with this order.

On April 21, 1986, Dr. Makii and Dr. Daniels filed motions to bar plaintiffs' use of expert testimony. On the same day, the court entered an order barring plaintiffs from introducing expert testimony against Dr. Makii. Plaintiffs never filed a written response to Dr. Daniels' motion to bar and never filed an affidavit by an intended expert. Instead, during oral argument plaintiffs' counsel stated that he had an expert who was in South America and requested an additional 60 or 90 days to disclose his identity. The trial court ordered plaintiffs to disclose their expert witness against Dr. Daniels by June 6, 1986, and to submit the expert for deposition by July 22, 1986. Plaintiffs failed

to comply with these orders. On June 19, 1986, plaintiffs wrote to all parties, designating Dr. Fierer as their expert witness. Plaintiffs later notified all parties that Dr. Fierer would be deposed on July 25, 1986.

On July 7, 1986, Dr. Daniels' attorney wrote to plaintiffs' counsel, stating, "On June 19, 1986, *** you stated that Dr. Fierer 'would not have much to say about Dr. Daniels.' " Defense counsel requested a summary of Dr. Fierer's opinion prior to his deposition so that counsel could prepare accordingly. On July 8, 1986, Dr. Daniels filed interrogatories requesting the identities and opinions of any expert witnesses plaintiffs planned to use at trial.

In a July 9, 1986, letter regarding Dr. Fierer's deposition, plaintiffs' counsel stated that "Dr. Fierer has reviewed the depositions of Drs. Daniels and Verma. He has also reviewed the hospital chart from South Chicago Community Hospital. In his verbal report to me, his major complaint was the failure to administer Emetine [an antibiotic] upon the diagnosis of amebiasis." Plaintiffs voluntarily dismissed Dr. Makii as a defendant.

On July 21, 1986, Dr. Daniels again asked plaintiffs for answers to the Rule 220 interrogatories. Defense counsel wrote, "Please consider this my final 201(k) request for the plaintiff's answers to Dr. Daniels' Rule 220 Interrogatories. *** My client and his insurer are certainly entitled to know in advance [of the deposition] whether Dr. Fierer will criticize Dr. Daniels' care and treatment and the nature of those criticisms before I travel to California for his deposition. Otherwise, I will be forced to seek court assistance to resolve this matter." Plaintiffs failed to respond to the request.

On July 25, 1986, Dr. Fierer was deposed. He opined that, although Dr. Daniels may have exercised bad judgment, there were no deviations from the standard of care. He testified similarly regarding the treatment provided by defendants Drs. John Harrod and Harry Waddington. Following this deposition, plaintiffs entered into an agreed order for summary judgment in favor of Drs. Harrod and Waddington.

On November 12, 1986, Dr. Daniels filed a motion for summary judgment and a motion to bar plaintiffs from using expert testimony against him at trial. Plaintiffs filed no response. The court later granted plaintiffs 60 additional days, until February 16, 1987, to file a written response to Dr. Daniels' pending motions. Plaintiffs again filed no response.

On February 25, plaintiffs' counsel wrote to defense counsel stating that Dr. Marc Pomerantz was to be their new expert. Defense counsel replied that the letter was insufficient disclosure of the iden-

tity and the substance of the medical opinion required under the previous court orders and Rule 220 interrogatories.

On March 3, 1987, plaintiffs filed their answer to Dr. Daniels' interrogatories. Plaintiffs identified Dr. Pomerantz as an expert witness. Plaintiffs filed an emergency motion to extend the time in which they could respond to Dr. Daniels' motions for summary judgment and to bar experts. In answer to an interrogatory seeking a statement of the expert's opinion, plaintiff stated: "I believe that Dr. Pomerantz has the opinion and conclusion that Dr. Daniels' treatment of me did not conform to the standards of practice of a general surgeon. In particular, I expect that Dr. Pomerantz will state that my amebic infection should have been treated earlier with different medications and that the loss of my rectum was unnecessary."

In summary, the record fails to show that during the first eight years of litigation plaintiffs failed to consult or disclose any expert who would opine that Dr. Daniels was negligent. Plaintiffs' own expert found the contrary to be true. Under these facts, we find that the trial court did not abuse its discretion in barring any additional expert testimony as to Dr. Daniels' treatment of plaintiff. We will not disturb its judgment.

■■ Plaintiffs' argument that the summary judgment should be reversed is predicated solely upon the order barring Dr. Pomerantz' testimony. Otherwise, plaintiffs assert that their allegations could not be proved without the testimony of an expert witness and that they are "unable to make out a *prima facie* case against the defendant. Plaintiffs did not respond to the motion for summary judgment for the simple reason that there was no response to be made." As we have stated, the trial court had the authority to bar the expert testimony, and we hold that it did not abuse its discretion in doing so. Consequently, the order entering summary judgment in favor of defendant was proper because plaintiffs presented no facts which indicated Dr. Daniels deviated from the relevant standard of care.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.