DONALD ANDREWS, Plaintiff-Appellant, v. NORTHWESTERN MEMORIAL HOSPITAL, Defendant-Appellee.

First District (5th Division)   No. 1—87—1695

Opinion filed May 26, 1989.

John J. Lowrey and Mary Jo Smerz, both of Law Offices of John J. Lowrey, P.C., of Chicago, for appellant.

Arnstein, Gluck, Lehr & Milligan, of Chicago (Miles J. Zaremski, Arthur L. Klein, and Janis M. Gibbs, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Donald Andrews, appeals from the entry of summary judgment in favor of defendant, Northwestern Memorial Hospital, on his amended complaint for corporate negligence. We address the issue of whether plaintiff presented sufficient evidence that defendant deviated from the applicable standard of care to overcome summary judgment. We reverse and remand.

On November 16, 1984, plaintiff filed an amended three-count complaint against defendant and Dr. Edir Siqueira, who is not involved in this appeal, alleging negligence for injuries which resulted from two operations performed at the hospital on December 6, 1976, and January 10, 1977. Siqueira, a neurosurgeon, performed both surgeries, a left suboccipital craniectomy and section of the left ninth cranial nerve and a right suboccipital craniectomy and section of the right cranial nerve.

In count II of plaintiff's amended complaint, at issue on appeal, plaintiff alleged that defendant, "through its duly authorized agents and employees," was negligent when it: (1) performed the surgeries on plaintiff when they were not warranted; (2) failed to prescribe a more conservative treatment; (3) negligently performed the second surgery on plaintiff when it interfered with the blood supply to the other cranial nerves and/or severed the other cranial nerves; (4) failed to adequately evaluate plaintiff's condition and his need for both surgeries; (5) failed to require examination, treatment, and consultation by competent medical experts and specialists; and (6) failed to supervise the competence of the physicians in the neurosurgical department of the hospital.

Defendant filed its answer to the amended complaint denying that plaintiff was under the care of its employees or agents, denying that its agents or employees performed the surgeries, and denying the negligence allegations.

In Siqueira's answers to interrogatories, he listed the names of nine persons who had made a claim or filed a lawsuit against him alleging medical malpractice or professional negligence. He also stated that defendant had denied him professional privileges. During the course of litigation Siqueira entered into a settlement agreement with plaintiff.

At a pretrial conference on March 4, 1985, an order was entered limiting plaintiff and defendant to one testifying expert each at trial and barring any expert not previously disclosed from testifying at trial. Prior to the pretrial conference, plaintiff had disclosed that his expert was Dr. Peter Rocovich, who was deposed on January 26, 1984.

On February 3, 1987, defendant filed a motion for summary judgment on count II of plaintiff's amended complaint, arguing that plaintiff had not produced any expert testimony establishing that defendant deviated from the standard of care for hospitals. The only expert plaintiff had disclosed was Rocovich, and defendant relied on the following excerpt from Rocovich's deposition testimony in support of its motion:

"Q. Are you aware that Northwestern Memorial Hospital is a defendant in this case?

A. Well, I—yes.

Q. *** [I]n the course of your review of the records and the deposition of Doctor Siqueira, *** you have formed an opinion that with the exception of Doctor Siqueira that there was no deviation from the standard of care with regard to Northwestern Community [sic] Hospital or any of its agents or employees?

A. I can't think of anything at this time."

Defendant did not support its motion with an affidavit but merely relied on Rocovich's deposition testimony.

Plaintiff submitted the affidavit of Nathan W. Helman, as an expert in hospital administration, as evidence that defendant deviated from the standard of care. Helman's resume established he was a certified public accountant with extensive experience in hospital administration. He stated in his affidavit that he had previously testified as an expert in hospital administration. His opinion for plaintiff's case was based on his review of the following documents: (1) the standards of the Joint Commission on Accreditation of Hospitals (JCAH), which sets minimum standards for hospitals in the Chicago area; (2) the defendant's bylaws; (3) the defendant's bylaws for its medical staff; and (4) the State of Illinois regulations for hospital licenses. In violation of Supreme Court Rule 191(a), none of the documents Helman relied on were attached to the affidavit. 107 Ill. 2d R. 191(a).

In Helman's opinion, defendant's bylaws deviated from JCAH standards in the following manner: medical clinical privileges in both the corporate bylaws and the medical staff bylaws were not delineated; medical staff appointments were made to the doctor's 68th birthday, where the JCAH requires reappointment every one to two years; and there was no provision for summary suspension of a doctor's clinical privileges when his competence is questioned by the chairperson of a department or division. Additionally, defendant approved the appointment of Dr. Anthony Raimondi as chairperson of the neurosurgery division of both defendant's hospital and Children's

Memorial Hospital. Helman stated the dual appointment made it "impractical" for Raimondi to properly evaluate defendant's doctors, specifically Siqueira, and prevented a fair evaluation of his work.

Helman stated that the chairperson of the department of surgery deviated from JCAH standards when he did not "insist" that the medical clinical privileges of the neurosurgeons on staff be reviewed periodically and failed to base review of the neurosurgeons on observations, records, and peer review.

Helman also stated that the chairperson of the division of neurosurgery deviated from JCAH standards when he did not establish a system to review the quality of patient care given by neurosurgeons with the rank of attending staff physician and did not regularly and properly review the medical clinical privileges of those neurosurgeons, including Siqueira.

In Helman's opinion, these deviations from the standard of care "jeopardized and adversely affected the safety and well-being of [plaintiff]." In his affidavit Helman cites to specific sections of defendant's bylaws that he claims are in violation of the JCAH standards; however, he does not cite to specific sections of JCAH standards that were violated.

Defendant moved to strike the affidavit for failure to comply with Supreme Court Rule 191(a), arguing it did not state with particularity the facts upon which the claim is based, the documents relied on to form Helman's opinion were not attached, and the affidavit contained conclusions, not facts admissible in evidence.

At the hearing on the motion for summary judgment, plaintiff attempted to name Helman as his expert for the action against defendant. The court held that as a matter of law Helman, an "accountant/administrator," could not give expert testimony which would prove defendant was liable under the pleadings. The court stated that in addition to Helman, a medical expert was necessary to establish defendant was negligent. As the court stated, "He is not enough to carry your burden of having an expert state that the hospital was negligent as stated in [the] complaint." Plaintiff's attorney stated she intended to name a medical expert who, at that time, was reviewing the medical records. Defendant noted that an order was entered limiting plaintiff to only one expert, Rocovich. Plaintiff argued Rocovich was only offered as an expert against Dr. Siqueira. Plaintiff's request for a continuance was denied.

The court granted summary judgment in defendant's favor. In the same order, the court granted defendant's motion to strike Helman's affidavit; however, the motion to strike was not addressed at the

hearing and the court did not make a specific finding as to the reason the affidavit was stricken. Plaintiff filed a timely notice of appeal.

OPINION

In reviewing the entry of summary judgment, our function is to determine whether the pleadings, depositions, and affidavits reveal a genuine issue of material fact. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); *Warren v. Coca-Cola Bottling Co.* (1988), 166 Ill. App. 3d 566, 519 N.E.2d 1197.) The evidence must be viewed strictly against the movant and liberally in favor of the opponent. (*Eberle v. Brenner* (1985), 131 Ill. App. 3d 394, 475 N.E.2d 639.) Summary judgment is to be encouraged as an aid in the expeditious disposition of a lawsuit but it is a drastic means of disposing of litigation. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.) The movant must affirmatively show a clear right to summary judgment which is free from doubt. (*La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 498 N.E.2d 697.) Although an opponent to a motion for summary judgment need not prove a *prima facie* case of negligence to overcome a defendant's motion for summary judgment (*Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 496 N.E.2d 281), he is required to present some factual basis that would arguably entitle him to judgment in his favor. *Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 529 N.E.2d 40.

On appeal, plaintiff argues the trial court improperly granted summary judgment because expert testimony is not necessary to establish corporate negligence, defendant did not adequately support its motion for summary judgment, and Helman's affidavit established a question of fact precluding summary judgment. Defendant responds that medical expert testimony is required to establish corporate negligence and Helman's affidavit is insufficient to raise a question of fact.

In opposition to defendant's motion for summary judgment, plaintiff relied on the affidavit of Helman as an expert in hospital administration. Although the trial judge entered an order granting defendant's motion to strike the affidavit, the judge did not state his reasoning on the record. We must review whether striking plaintiff's affidavit was proper.

The affidavit itself presents several problems. First, an order was entered at a pretrial conference which limited both plaintiff and defendant to one testifying expert and barred any previously undisclosed expert from testifying at trial. At the time the order was entered, plaintiff had disclosed his expert was Rocovich. Under the order, Helman would be barred from testifying at trial.

■ Supreme Court Rule 218 allows the trial court to enter an order at a pretrial conference limiting the number of expert witnesses at trial and also provides that "[t]he order controls the subsequent course of the action unless modified." (107 Ill. 2d R. 218.) At the hearing on the motion, plaintiff requested a continuance to name a medical expert and apparently to obtain relief from the order but the trial court denied the request. The granting of a continuance is a discretionary matter for the trial court (*Dawson v. St. Francis Hospital* (1988), 174 Ill. App. 3d 351, 528 N.E.2d 362); however, in this case we believe the trial court abused its discretion. At the hearing on the motion, plaintiff presented Helman's affidavit, which was some evidence that defendant deviated from the standard of care. Defendant presented only inconclusive evidence as to whether it deviated from the standard of care. Accordingly, plaintiff should have been allowed the opportunity to modify the order which limited him to one expert to enable him to name Helman as an expert. It was improper for the trial court to grant defendant's motion to strike the affidavit solely on the basis of the order.

■ Second, Helman relied on several documents to form his opinion but they were not attached to the affidavit as required under Supreme Court Rule 191(a). In his reply brief, plaintiff claims the documents were produced when the motion was argued, but the report of proceedings does not reflect that plaintiff tendered a copy of defendant's bylaws or JCAH standards. Nevertheless, the failure to attach the documents is a technical violation of Supreme Court Rule 191(a) which should be disregarded when it appears the affiant would be a competent witness at trial. (*Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 496 N.E.2d 281.) At the hearing on the motion, the trial court initially stated, "[Helman] is not an expert insofar as this action is concerned," but then later stated, "I agree with you that he could testify as to certain things *** [Helman] would be a stepping stone, a building block, no question about it. I'm sure he can testify." Apparently, the trial court believed Helman would be a competent witness at trial, and from our review of Helman's affidavit, we agree. The affidavit should not have been stricken for failure to attach documents because it appears Helman is competent to testify.

Third, Helman did not refer to specific sections of the JCAH standards that defendant violated. However, Helman did state the specific nature of the standards violated. For example, JCAH required periodic reappointment every one to two years and provisions for summary suspension. Although Helman did not refer to exact sections of the JCAH standards, he did state specific circumstances of

defendant's conduct that violated JCAH standards.

The trial court, therefore, improperly granted defendant's motion to strike Helman's affidavit. Finding that the affidavit was improperly stricken, we address the question of whether the trial court properly granted defendant summary judgment.

Defendant's motion was supported only by the deposition testimony of Rocovich, who stated when asked whether defendant deviated from the standard of care, "I can't think of anything at this time." Plaintiff contends Rocovich's deposition testimony is not properly before this court because it is unsigned; however, this argument is waived because plaintiff did not raise this objection in the trial court as required under Supreme Court Rule 211(d) (107 Ill. 2d R. 211(d)). (*Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 468 N.E.2d 477.) Defendant characterized Rocovich's testimony as establishing that defendant did not deviate from the standard of care. However, Rocovich's testimony is merely inconclusive on this point, supporting neither plaintiff's nor defendant's position. Defendant then did not present evidence supporting its motion for summary judgment.

On appeal, defendant argues that plaintiff cannot establish an action for corporate negligence without medical expert testimony on the issues of the hospital's standard of care and causation.

■ A hospital owes a duty to its patients to exercise reasonable care in light of apparent risk. (*Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 303 N.E.2d 392.) A hospital has an independent duty to its patients to review and supervise treatment. (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) A plaintiff must prove that a hospital failed to comply with the proper standard of care and that the failure resulted in injury. *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 490 N.E.2d 181.

On the issue of what evidence is required to prove the standard of care, our supreme court has noted:

> "[W]hile various medical judgments are necessarily a daily part of hospital administration, they do not constitute the entirety of a hospital's function, as is the case with single medical practitioners. Thus, we deem it appropriate to the diversity inherent in hospital administration that a broad range of evidence be available to establish the applicable standard of care." (*Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 293, 415 N.E.2d 390, 395-96.)

Generally, expert testimony is required unless defendant's conduct is

so grossly negligent or the treatment is so common that a lay person could readily appraise it. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803.) In addition to expert testimony on the applicable standard of care, State licensing regulations, the hospital's bylaws, and accreditation standards and regulations are admissible but they do not conclusively determine the standard of care. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.

In opposition to the motion, plaintiff presented Helman's affidavit as an expert in hospital administration. Defendant did not file a counteraffidavit, and therefore, the facts contained in the affidavit are admitted and must be taken as true. *Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 491 N.E.2d 803.

■ Helman's affidavit established that defendant's bylaws did not conform to JCAH standards in several ways. Medical privileges were not delineated, medical staff appointments were made to the doctor's 68th birthday, and there was no provision for summary suspension of a doctor's clinical privileges. Also, defendant did not establish a system to review the neurosurgeons, including Siqueira. Helman stated these deviations "jeopardized and adversely affected" plaintiff's safety.

We believe Helman properly established the applicable standard of care for a hospital. In *Greenberg v. Michael Reese Hospital* (1980), 83 Ill. 2d 282, 415 N.E.2d 390, plaintiffs sued a hospital for negligence for radiation treatment and the hospital moved for summary judgment. The hospital relied on the deposition of its expert, who was a medical doctor, and plaintiff relied on the affidavit of a person who was an expert in the field of radiation therapy but who was not a medical doctor. The Illinois Supreme Court found the affidavit of plaintiff's expert was admissible in determining the standard of care on a motion for summary judgment even though he was not a medical doctor. Similarly in this case, although Helman is not a medical doctor, his affidavit exhibits an expertise in hospital administration and his testimony supports plaintiff's allegations that defendant failed to supervise Siqueira and failed to require a consultation.

■ Defendant on appeal also argues Helman cannot testify on the issue of causation in a corporate negligence case because he is not a medical doctor. Defendant admits there is no Illinois authority exactly on point to support its position. On the issue of causation, plaintiff alleged in his complaint that defendant's failure to supervise Siqueira and failure to require a consultation resulted in his injury. Plaintiff also presented Helman's affidavit, which stated that defendant's fail-

ure to supervise and review Siqueira was a deviation from the applicable standard of care which "jeopardized and adversely affected" plaintiff's safety. Additionally, plaintiff requested a continuance to present an affidavit of a medical doctor and the trial court abused its discretion when it denied the request. In light of the fact that defendant presented no evidence on the issue of causation, plaintiff's pleadings and Helman's affidavit were sufficient to establish a genuine issue of material fact as to whether defendant's actions proximately caused plaintiff's injuries. For purposes of summary judgment, Helman's affidavit, which was not contradicted by other evidence, was sufficient evidence to overcome defendant's motion for summary judgment.

For the foregoing reasons, the trial court improperly granted defendant's motion for summary judgment.

Reversed and remanded.

MURRAY, P.J., and PINCHAM, J., concur.